Price, J.
The plaintiff brought suit in the Court of Common Pleas of Crawford County against George J. Deatrick and his wife, to foreclose a mortgage on certain real estate owned by them, and situated in the city of Galion, O., which mortgage was executed by defendants to secure two notes of $1,500 each, all dated October 30, 1891 — the notes to become payable in one and two years respectively, and the petition prays that an account be taken of the amount due on the mortgage and for an order of sale of the premises.
The defendants answered the petition, admitting the execution- of the notes and mortgage — but allege certain facts which are claimed defeat the right of the plaintiff to enforce the mortgage — that their son-in-law, Harry Brown, who had for several years been in the employ of said Tracy ■& Avery as a traveling salesman, was at the time of the execution of the notes and mortgage under arrest on a charge of embezzling the money of said firm in a large sum, which charge was instigated by said firm, and that the sole consideration for said obligations, was the compromise of said charge, its withdrawal and the discharge of the accused. The answer recites the details of the transastions, some of which are shown in the findings of facts herein made.
The court of common pleas found for the plaintiff and ordered the premises sold, from which an appeal was taken to *112 this court. The case was referred to a master, who heard and reported the evidence together with his finding of facts and conclusions of law.
-The defendant excepted to the findings of the master, and we have heard the exceptions, and the report is hereby so modified as to be in accordance with the following facts:
“That on the 28th day of October, 1891, Harry Brown was, and for two years prior thereto had been, in the employ of Tracy & Avery, of Mansfield, Ohio, as a traveling salesman ; that finding said Brown short in his accounts of money collected by him for them, they on that day caused an affidavit to be filed with a justice of the peace at Mansfield in which the salesman was charged with having embezzled of their money the sum of $571.00; that a warrant was then issued for his arrest; that he was arrested that night at Ashland by the constable holding the warrant, taken to Mansfield, and on the morning of October 29 he was taken by the constable before the justice issuing the warrant. We find that Jenner & Tracy, a law firm of Mansfield, were acting as attorneys and advisers of said plaintiff in the matter of arrest and prosecution of Brown, and that Jenner of said firm was at the office of the magistrate when Brown was brought before him on said charge; that when the affidavit was read to the accused, and he was asked by the magistrate how he pleaded to the charge, and Brown responded that he was guilty. Whereupon Jenner stated to him that he should not be in haste j had better not make that plea yet. That it was a serious charge, and advised the accused to see an attorney; that not knowing attorneys of the place, the justice named over several lawyers, among whom was Judge Dickey, who about that time came into the office of the magistrate on some business, and that when informed by either the justice or Jenner, that here was a man iu trouble, Dickey held a conversation with the accused.
“We further find that before going to the office of the justice *113 the wife of Brown was informed by an employe of plaintiff of his arrest, and that his shortage was very large; that she was asked by Jenner if help could not be obtained from her or her husband’s people; and that it was suggested that her father and the father of Btowd be sent for, and a message was signed by the husband and sent to Deatrick and Brown at Galion, to come at once on an important matter. The criminal case, at request of Dickey, was adjourned until 2 o’clock of the 29th, at which time George J. Deatrick, and C. W. Brown, father of the accused, appeared at Mansfield, and for the first time learned of the trouble. They were informed that instead of the shortage being $571.00, it was $6,000.00 or over. After talk of adjusting the matter, Deatrick informed plaintiff he could not and was not able to settle such a sum, and was informed that the matter was in the hands of the attorneys of the firm, and no conclusion was arrived at at that time.
“When the parties appeared again before the magistrate, Jenner was preparing a new affidavit, charging the accused with embezzling about $6,000.00 of the firm’s money. Brown was all this time in custody of the officer on the former charge, but he had been told by the attorneys and others of the firm that his shortage was $6,000.00 or over, and plaintiffs then claimed, as they do now, that the accused admitted his shortage in the latter sum, and the firm were about to have a warrant issued and served, charging his crime ih that amount.
“Negotiations began again at this time for a settlement of the shortage by Deatrick and Brown’s father ; that after one or more offers by Deatrick had been made, and rejected by Jenner, Jenner started to the door of the office and told the constable to do his duty, at which the constable took hold of the accused, when his wife and her father became deeply distressed, she fainting and he breaking down. Deatrick then said to Jenner he would do what he demanded. He and the father of Brown would give a note for $3,000.00 until the next day, and sign the contract. That on the next day after plain *114 tiffs had examined the title to Deatrick’s real estate, he executed two notes'with the father of Brown, one for $1,500.00, due in one year, and another due in two years for the same amount, and secured the same by mortgage on real estate of Deatrick ; a copy of this contract is attached to the reply, and also one is in the report of the master. The $3,000.00 note was then signed on the 29th as well as the contract, and the next day the two notes of $1,500.00 each were substituted and the mortgage described in the petition executed.
“Upon the execution of said contract, the said Harry Brown executed his note for the sum of $3,000.00, payable to F. E. Tracy, trustee of Tracy & Avery, and upon the execution of all said notes and mox’tgage, Mr. Jenner, as attorney for Tracy & Avery, instructed Tracy & Avery -to credit the account of Harry Brown with the sum of $6,000.00, which credit was made on the books of Tracy & Avery, but it does .not appear that this was done in the presence of the defendants, or with their knowledge.
“We further find that it was well understood by Jenner, acting for the plaintiff, and by the parties who signed the notes and contract referred to, that if said contract and notes were executed, the prosecution already pending and the one for the larger sum impending, would be abandoned, and the prisoner released and discharged. And further we find that it was mutually xxnderstood by Jenner, acting for the plaintiff, the accused, his father and Geoi’ge J. Deatrick, that on his release and dischax’ge, that the papers on which his arrest was had, and on which he was about to be arrested, should be destroyed and no record made of any of them, and that in pursuance of said understanding the said papers were destroyed, no record made, and the plaintiff paid the costs of the prosecution, accused was released, and was not further prosecuted, and,
“That the sole and only consideration for the note and mortgage set out in the petition was the release, discharge *115 and agreement not to prosecute the said Brown upon said charge of embezzlement.”
The contract of October 29, the day before the execution of the notes and mortgages sued on, and which was plead in the reply, recited, that Harry Brown being indebted to the plaintiff in a large sum, the indebtedness was adjusted and settled by Deatrick and Harry’s father executing a note for $3,000.00 on that day, and that on the next day they should execute two notes of $1,500.00 each, in lieu of the $3,000.00 note, payable as above stated, which Deatrick was to secure by the mortgage in question, and Harry to give his individual note for $3,000.00, thus making the total $6,000.00. All this was done the next day as called for by this contract.
In view of these facts, what is the law that must control ? Deatrick and wife were not indebted to the plaintiff in any sum, and their notes and mortgage were executed to terminate the criminal prosecution and release the son-in-law, while at the same time it secured $3,000.00, one-half of the sum which the plaintiff claimed was the shortage of the agent. The plaintiff comes into a court of equity to enforce these obligations, executed and accepted under the circumstances, and for the purposes above narrated.
It is urged by the plaintiff’s counsel, that the written contract of October 29 was the real consideration for the notes and mortgage executed the following day, and which are involved in this action, inasmuch as the contract recites Harry Brown’s indebtedness to the plaintiff and stipulates for its settlement on the next day by the execution of the obligalions in question. And it is further urged that there being no other consideration mentioned in the contract, the defendant cannot go back of the written agreement to inquire into the facts that led to its execution, where there is no averment of fraud or mistake in the agreement, and no prayer for its reformation.
We are of opinion, the case cannot be so narrowed, and the court shut out of a full inquiry into the entire circumstances *116 and facts which culminated in the notes and mortgage. It is quite plain that the contract of October 29 was a temporary arrangement, and intended to bind Deatrick until the following day, in order that during the interval the counsel for plaintiff could examine the title to the real estate offered as security, and that when the title was found to be satisfactory the notes and mortgage were given.
This contract was but a temporary bridge, over which the parties passed from the transactions of that day to those ofthenext. It made the business of that day a necessary part of the business of the next day, and if this bridge was an illegal structure in that it has compounded a felony, it follows that the notes and mortgage taken in pursuance of it are likewise tainted and affected.
The contract cannot be used as a shield to protect the court from searching into the real consideration and the entire transactions of the parties.
We do not deem it necessary to here discuss the doctrine of common law as to the validity of such obligations as are here in question, where they rest for their origin on the compounding of a felony. The current of authorities is almost unbroken, that where the party favored by their execution seeks to enforce them, the court will deny him any assistance and leave him without remedy.
This subject has received attention in many cases decided by our Supreme Court. In Thomas v. Cronise, 16 Ohio, 54, the court says:
“ It is a universal principle, both in law and equity, that where an agreement is founded upon a consideration illegal, immoral, or against public policy, a court will leave the parties where it finds them. If executed,, the court will not rescind it; if executory, the court will not aid in its execution.”
In Kahn v. Walton, 46 Ohio St. 195, the following proposition is made:
“ A commission broker, who, with knowledge of its unlaw *117 ful character, negotiates an illegal agreement between parties, becomes a particeps oriminis, and cannot recover for services rendered, or losses incurred by him in behalf of either, in forwarding the unlawful undertaking, and checks given him for such services or losses, are tainted with the vice of their origin, and subject to all the infirmities of securities given for illegal considerations.”
The case just quoted from carefully reviews the authorities bearing on the various phases of illegal considerations for written instruments, and fully sustains us in our holding in this case.
But it is further argued by counsel for the plaintiff, that under the provisions, and especially the saving clause, in section 6901 of the Revised Statutes of Ohio, the plaintiff had a right to a restoration of what had been embezzled, and that in obtaining such restitution, no law was violated. The section referred to makes the compounding of a felony, itself a crime, and closes with the following proviso:
* * * “This section shall not apply to the receiving back by the owner thereof, or his agent, of any property stolen, embezzled, or fraudulently obtained, together with the actual expense of recovering the same.”
It is claimed by the plaintiff, that under this clause he had a right to take the notes and mortgage, and that a liberal construction of the language legalizes the transaction. Did the plaintiff receive back the property embezzled ? Or did he receive notes and mortgage of a third party who was under no obligations whatever to him ? These questions are easily answered. He did not receive back the property embezzled— but did receive property or a lien on property belonging to Deatrick.
We think the statute means the specific property embezzled and not its equivalent in value in lands or other kinds of property.
In support of their construction, counsel for plaintiff cite us to a case in the 52 Ill. Report. That case is based on the *118 language of the statute of that state which is very different from ours. It reads — “that no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury received by the commission of the criminal offense.”
Jenner & Tracy and Thomas Beer, for plaintiff.
S. B. Harris, B. W. Johnston and E. B. Finley, for defendants.
It is seen in this language that the owner may re-take his property, or, receive compensation, etc., for the private injury, etc.
The statutes of Illinois and Ohio are so much unlike on the subject under consideration, that we cannot receive the case referred to as having any authority in this case.
Again, it has been argued, that when the settlement was made and notes given plaintiff, that there no longer existed the offense of embezzlement, and by this form of satisfaction agreed upon, whatever of crime which had been charged against the agent, disappeared or was atoned for, and hence there was no compounding of crime in taking the mortgage.
We cannot sanction this view. If the crime had been once consummated, no repentance or contrition of heart, no restitution, no matter how ample, could wipe it out. No principle of criminal law is better settled than this.
' On the review of the whole case, we hold that the exceptions to the conclusions of law reported by the master should be and they are sustained ; that the exceptions to his findings of fact are sustained in part, and they are modified in accordance with this opinion, and as so modified his report is confirmed.
There is a finding and a decree for the defendant, the petition dismissed with costs, and cause remanded for execution for costs.
Day, J., dissents.